## THE STATE v. SHERMAN.

1. **Auditor of State:** DUTY OF: ISSUANCE OF WARRANTS. It is the duty of the Auditor of State to issue a warrant for money appropriated by the General Assembly whenever the appropriation is payable, regardless of the fact that there may be no money in the treasury with which to pay it.

2. **State University:** CONSTRUCTION OF STATUTE: APPROPRIATION. An act appropriating money for the maintenance of the State University embraced the following provision: "That there be and is hereby appropriated, out of any money in the State treasury not otherwise appropriated, the sum of forty-seven thousand four hundred and fifty-seven dollars, * * * * which sum may be drawn from the State treasury in eight equal quarterly installments, commencing on and with the first day of July, or as soon after such quarterly periods as the money in the State treasury will allow." *Held*, that the appropriation was absolute and unconditional. DAY, CH. J., and SEEVERS, J., *dissenting*.

3. ———: ———: ———. In the construction of the clause of a statute the context is to be regarded, as well as other statutes *in pari materia*, and the reason and spirit of the law.

*Appeal from Polk District Court.*

FRIDAY, JULY 13. ·

THIS is a *mandamus* proceeding for the purpose of compelling the defendant, the Auditor of State, to issue warrants upon the State treasury in favor of the proper officer of the State University, for money appropriated for its support by Chap. 168, Acts Sixteenth General Assembly. The petition alleges that, under the act, it is the duty of defendant, as Auditor of State, to draw certain warrants upon the State treasury, which he fails and neglects to perform. A demurrer to the petition, on the ground that it shows the money for which the warrants are asked is not due and payable to the University, was sustained. Plaintiff standing upon the petition, judgment was rendered upon the demurrer. Plaintiff appeals.

*Clark & Haddock* and *J. F. Duncombe*, for appellant.

*J. F. McJunkin, Attorney General*, for appellee.

BECK, J.—Certain constitutional provisions and legislative enactments affecting the State University may be briefly stated, as they have a bearing upon the question involved in this suit. The University was established by express provisions of the Constitution of the State. Art. 9, Sec. 11; Art. 11, Sec. 8. The State received a generous grant of lands from the General Government for the support of the University. Art. 9, P. 2, Sec. 5, of the Constitution, secures the faithful discharge of the trust assumed by the State in accepting these lands; and Art. 9, P. 2, Sec. 3, imposes upon the General Assembly the duty of encouraging, by all suitable means, the promotion of intellectual improvement. Code, Chap. 2 of Title 12, carries out the requirements of the Constitution establishing the University by provisions for its government and support. A seat of learning, of no narrowly limited extent and capacity, having several departments and numerous professorships, has been thus established by the State

and has been in successful operation for a number of years. Hundreds of the youth of the State are receiving instruction in its literary and scientific departments, and the departments of law and medicine have numerous students. A large and efficient faculty has been for years organized and is now con-. nected with the institution. For many years its income, de-. rived from the proceeds of the lands granted to the State by Congress and appropriated to its support and from other sources, has proved inadequate to pay its current expenses, and the General Assembly at almost every session since its organization, if not at all, has supplied the deficiency by ap-. propriations from the State treasury. The Sixteenth General Assembly, for the purpose of aiding the support of the insti-: tution, passed an act making an appropriation therefor. The following is a full copy of the act:

## "APPROPRIATION FOR STATE UNIVERSITY.

" AN ACT APPROPRIATING MONEY FOR THE AID AND MAINTENANCE OF THE STATE UNIVERSITY.

" *Be it enacted by the General Assembly of the State of Iowa:*

"SECTION 1. That there be, and is hereby appropriated out of any money in the State treasury, not otherwise appro-; priated, the sum of forty-seven thousand four hundred and; fifty-seven dollars ($47,457.00) to aid in the present support, of the State University in all its chairs and departments, and the expenditures incident to the maintenance of said institution for the ensuing biennial period; which sum may be drawn from the State treasury in eight equal quarterly installments, commencing on and with the first day of July, 1876, or as, soon after such quarterly periods as the money in the State Treasury may allow; the said sum to be drawn by the Treasurer of said University on the order of the Executive Committee appointed by the Board of Regents of said institution, countersigned by the Secretary thereof under the University seal.

"SEC. 2.. The Board of Regents of said University are,

hereby authorized and directed to establish a department of homeopathy, in connection with the medical department of said University, as soon as practicable, to consist of two chairs, and may appropriate the sum of four thousand and one hundred dollars ($4,100) for the payment of two professors, and the necessary appurtenances to the said medical chairs; and three thousand two hundred [dollars] ($3,200) to employ Curator Woodman, as recommended by Board of Regents; *provided*, that the money hereby appropriated for the support of two medical chairs in homeopathy shall not be used for any other purpose.

"Sec. 3. The Board of Regents of said State University may order the expenditure of such portion of said appropriation as may not be necessary to the ordinary support and incidental expenses of said University, and for the support of the department of homeopathy, provided for in section two (2) of this act, for the making of such repairs and additions to the buildings as they may deem expedient, and for the promotion of the means of instruction in the said institution in such manner as said board may deem for the best interests of the institution.

"Sec. 4. The Regents of the State University may, in their discretion, make the law and medical departments self-supporting by fixing the fees of students in these departments at such sums as will defray all the expenses of those departments.

"Approved March, 17, 1876."

The Auditor of State, who is charged with the duty of issuing warrants upon the State treasury for money appropriated by the General Assembly, declines to issue warrants for the sums provided by the first section of this act on the ground that there is no money in the State treasury out of which the warrants can be paid at the time of their execution.

He understands the law to provide that the appropriation is to be paid quarterly if there be money in the State Treasury, if not, as soon after as funds may be found on hand. In other

words, he holds that the appropriation is not due at the quarterly periods unless there be money in the treasury out of which it may be paid, and will not become due until money be afterward found from which the warrants may be paid.

The officers of the University insist that the appropriation is payable under the act in quarterly installments, and therefore it is the duty of the auditor to issue warrants therefor without regard to the fact of the want of money in the State Treasury to meet them.

It becomes our duty to determine the true construction of the act above quoted, and thereby to decide the point of difference presented for adjudication in this case. Reference must here be made to other statutory provisions which afford light for the solution of the question submitted to us.

It is the duty of the Auditor of State "to draw warrants on the treasurer for money directed by law to be paid out of the treasury, as the same may become payable." Code, Sec. 66, P. 8. "When the amounts due from the State to any person exceeds twenty dollars, the auditor shall, if requested, divide the amount in parcels of not less than ten dollars, and issue warrants therefor." Sec. 66, P. 12. Upon the presentation of an auditor's warrant to the Treasurer of State, if there be no money in the treasury, he is required to indorse upon it the day of its presentation, and therefrom it draws interest at six per centum per annum. Code, sections 76, 78. When sufficient money comes into the treasury the outstanding warrants are paid in the order of their presentation. Section 79.

*1. AUDITOR OF state: duty of: issuance of warrants.*

It will thus be seen that the auditor is required to issue a warrant for money appropriated by the General Assembly when payable, without regard to the fact that there may be no money in the treasury to pay it. The warrant then draws interest. As a matter of fact this is not infrequently done, for, unfortunately, the income of the State does not always equal its expenditures, as appropriated by the General Assembly. It is a fact, also, of which we will take judicial notice, that auditor's warrants, when they cannot be paid by the treasurer for want of funds, have such value that money may

be readily raised thereon at rates which many who receive them in payment of claims against the State are willing to accept. They are often negotiated at par, the interest they draw giving to them such value. These statutory provisions and facts will be remembered when referred to hereafter in the course of our inquiry.

We come now to the discharge of the task imposed upon us of construing the act above quoted. It is our duty to seek after the legislative will expressed in the law by discovering the intention of the law makers, revealed by the language of the act and by other signs found in the body of the act itself.

II. We resort first to the words of the statute. The act appropriates a sum of money ($47,457) to the University. By its language the appropriation is absolute and not conditional. But there are certain conditions upon which it is to be *drawn* from the treasury, expressed in the following words, viz: " which sum may be drawn from the State treasury in eight equal quarterly installments, commencing on and with the first day of July, 1876, or as soon after such quarterly periods as the money in the State Treasury may allow."

2. STATE UNI-VERSITY: construction of statute: appropriation.

Now, the money appropriated may be drawn in two ways, the first, quarterly. There is no trouble thus far. The next manner of drawing is expressed by the words, " or as soon after such quarterly periods as the money in the State Treasury may allow." To what act and thing does the adjunct, coupled to the sentence by the disjunctive conjunction " or," refer? The drawing of money. What money? The money appropriated by the act, not the money to be paid in quarterly installments which is referred to in stating the first manner of payment. The " or" introduces another way of paying the sum appropriated, which is the payment of the whole sum after any quarterly period, if there be money in the treasury. The " *or* " does not introduce another time for paying the quarterly installments. To so hold would do violence to the language of this section.

The clause under consideration is elliptical. After the word " *or* " a subject and predicate must be supplied. The subject

is "sum," the predicate is "may be drawn." Supplying the ellipsis, the whole clause would read as follows: "Which sum may be drawn from the State treasury in eight equal quarterly installments, commencing on and with the first day of July, 1876, or [which sum may be drawn from the State treasury] as soon after such quarterly periods as the money in the State treasury may allow." If a quarterly payment has been made, the balance may be drawn under the last condition. The University may refuse to take warrants for the quarterly payments, if there is no money, and "draw" all the money when the treasury is in funds. In that case it is entitled to warrants for the whole sum.

The language in providing when the appropriation "may be drawn from the State treasury," prescribes in that manner when it is due and payable. If a statute declares that money may be "*drawn*" from the treasury for a given object at a given day, it thereby declares that it is due and payable on and after that day. The auditor must issue a warrant therefor whether there be or be not money in the treasury to pay it. The sum appropriated being payable quarterly the auditor is required to issue warrants accordingly. But if there be money sufficient to pay the whole sum appropriated after any quarterly period, the sum undrawn may be drawn under the second condition prescribed for its payment.

Misunderstanding of the language under consideration arises from incorrectly assuming that it is intended to control the payment of the warrants by the treasurer. The language is intended to declare when and upon what conditions the money becomes payable. If payable, the warrants must issue if there be no money in the treasury. Other provisions of the Code, and the necessity of the case, direct the payment of warrants by the treasurer. If there is no money on hand, he cannot pay and the law does not require of him an impossibility. The outstanding warrants, when there is money, are paid in the order of their presentation and indorsement.

But the grave error into which defendant has fallen is in regarding "quarterly installments" as the subject of the elliptical adjunct of the sentence, which we are required to inter-

pret. The interpretation we put upon the adjunct is not only in accord with its grammatical construction but with its plain meaning. It is true the grammatical construction of the language of a statute will not be followed when it clearly appears that the legislative intention may be found by adopting a construction in conflict with the rules of our language; but ,we will not violate these rules for the purpose of finding the intention of the law makers. We may violate them when such intention, clearly expressed, requires us to do so.

III. It will be discovered that the conclusion we have reached is supported by the application of other rules for the interpretation of statutes approved by the law. These rules direct attention to signs of the legislative intention (other than the words of the statute), among which are the context of the clause in question, statutes *in pari materia*, and the reason and spirit of. the law.

These afford clear indications of the will of the legislators, because it must be presumed that statutes are intended to be harmonious in all their parts, and consistent with all other statutes upon the same subject which are not repealed, and that the language of the law makers was used in reference to the subjects of the statute in a sense that would promote the remedy or relief which is the object of the enactment.

As we have seen the University is an institution established by the Constitution of the State, and its organization provided for, and its existence secured by statutes. The institution is intended to be an efficient means of promoting intellectual improvement. Constitution, Art. 9, P. 2, Sec. 3. Code, Sec. 1585. As organized by law, its income derived from the bounty of the General Government and appropriations from the State is not sufficient for its support..

The title of the statute in question declares its object to be an appropriation " for the *aid* and *maintenance* of the State University." The first section declares the appropriation is intended " to aid in the *present* support of the State University in all its chairs and departments, and in the expenditures incident to the maintenance of said institution, for the ensu-

ing biennial period." Other language of the act clearly reveals the legislative intention that the institution shall be supported and maintained as at present organized. This is the very spirit of the act. The reason of the statute is found in the policy of the State, established by constitutional provisions and enforced by statutes, to maintain the University as a seat of learning in the State. To maintain the institution, the current expenses must be paid. An appropriation, if it may be so called, which would fail to afford the University means to do this, would not aid its support and maintenance; it would be a mockery. As we have seen, an appropriation by the General Assembly, when due and payable, authorizes the auditor to draw warrants on the treasurer. These warrants may be negotiated if the treasury is without funds, and the creditor of the State may thus receive his money.

This course seems to be contemplated in the legislation of the State. It is often pursued. In fact many of the institutions of the State resort to it in order to meet their current liabilities. That this course would be pursued by the University, must be presumed to have been in the contemplation of the General Assembly. In this view the appropriation was intended to be available to the University, although the State treasury should be without funds.

The interpretation of the clause of the first section of the act in question, which is insisted upon by defendant, would deprive the University of the means of support to be derived from the appropriation when no money is found in the treasury. But this view is not in harmony with the context and other statutes *in pari materia*, and is in conflict with the reason and spirit of the act.

The interpretation we adopt is in harmony with all. Many other arguments based upon the rules of interpretation above stated and upon other rules recognized by the law could be advanced.

We refrain, however, from a further discussion of the subject, as, in our opinion, the conclusion we reach is sufficiently supported by the arguments we have briefly advanced. In

our judgment the District Court erred in sustaining the demurrer of defendant to plaintiff's petition.  REVERSED.

SEEVERS, J., *dissenting*.—A brief statement will enable me to sufficiently indicate why I am unable to agree to the foregoing opinion:

1.   It is the duty of the Auditor, and he has authority *only* "to draw warrants on the treasury for money directed by law to be paid out of the treasury as the same may become payable." Code, Sec. 66, subdivision 8.  If the money is not payable or subject to be drawn from the treasury in accordance with some law, then the Auditor cannot draw the necessary warrants to enable the parties entitled thereto to draw or obtain the money from the treasury.

2.   The Auditor is the financial agent of the State, and if money can be drawn from the treasury only upon the happening of some contingency, it is his duty before drawing warrants therefor to ascertain and know that the contingency, whatever it may be, has occurred and is an existing fact.

3.   As I understand the act in question, the money claimed by the University is not due and payable for the reason that it is conceded there is no money in the State treasury.   There is no doubt as to the appropriation.   The difficulty is that the money so appropriated can *only* be "drawn from the State treasury in eight quarterly installments, commencing on and with the first day of July, 1876, or as soon after such quarterly periods as the money in the State treasury may allow." I am unwilling to believe the legislative intent to be other or different from what to my mind the foregoing language indicates, and that is, that the money cannot be drawn at such quarterly periods unless it is in the treasury, and if not there then it may be drawn as soon thereafter as there is money in the treasury.   The latter part of the provision controls and limits the first part.   If this be not true, then it necessarily follows that if, at any time after the first quarterly period, there was sufficient money in the treasury, the whole amount of the appropriation could be drawn at one time.   I do not believe such was the legislative intent.

4. When warrants are drawn they may at once be presented for payment, and if there are no funds it is the duty of the treasurer to indorse them as provided by law, and they thereafter bear interest. The presumption must be that the General Assembly supposed when making the appropriation there would be funds in the treasury which could be applied to the payment thereof as fast as the wants of the University required, and that it was not the legislative intent to borrow money or pay interest on the whole or a part of the appropriation, and by that means support and maintain the University, but that if the State had the money the intent was to maintain it, otherwise not. This thought is aided by the fact that this is the only appropriation of the numerous ones made which contains any such provision. All others are payable absolutely, whether there are funds in the treasury or not.

It is not my province to either approve or condemn this action of the General Assembly, but to declare its meaning and intent as I understand it, regardless of consequences. I am of opinion the judgment below should be affirmed, and in this view DAY, CH. J., concurs.