WESTON E. JONES, Appellee, v. RAY DUNKELBERG et al., Appellants.

No. 43453.

FEBRUARY 13, 1936.

REHEARING DENIED JULY 31, 1936.

Larson & Carr, for appellants Ray Dunkelberg, chairman, and Fred C. Clark, Myron Rodamaker, Andrew Nelson, Dick Cummings, members of the Board of Supervisors, and Gus O. Michell, auditor.

Edward L. O'Connor, Attorney General, and Le Roy A. Rader, Assistant Attorney General, for appellants Bessie Regel, chairman of the Old Age Assistance Board of Floyd County, Lucie Toepfer and Seth Cheney, members of said board, Old Age Assistance Commission, and Mrs. E. R. Meredith, chairman of said commission, and A. L. Urick, John F. Porterfield, members of Old Age Assistance Commission, and Byron G. Allen, superintendent of the Old Age Assistance Commission.

Jens Grothe, and Carl A. Burkman, for appellee.

PARSONS, J.—This is an action really for the interpretation of some of the provisions of the old age assistance act, and it was formerly before this court and considered in an opinion filed February 5, 1935.*  The court did not decide anything in that case, except merely to send it back to the court below to have the issues so fixed up, if possible, as to present the questions to be determined in this case, which involved a proper construction of the act in question, chapter 19 of the Extraordinary Session of the 45th General Assembly.

This court regarded, or took it, that the action as it then stood was a collusive case, that as it then stood it was not proper for the court to undertake the interpretation of the act, although some things were said about the act in the case in that opinion more in the nature of pointing out the questions which might arise.  The case as it now stands is an action brought to enjoin the board of supervisors of Floyd county from paying a bill of one Emil Theno, a member of the county board under the old age assistance act, which bill was for expenses primarily, although some of the items of that bill may not have been properly stated as expenses.  The bill totaled $13.40.  So that the amount involved is not great, and we will treat the case as if the statement were properly made out strictly in accordance with the statute, for expenses.  The bill bore date of August 4,

*Not officially reported.

1934, and all items thereon were for dates previous to amendment of the law; the last item being of date July 30, 1934.

So the whole matter comes under and is governed by chapter 19 of the Laws of the 45th G. A., Extraordinary Session (Code 1935, chapter 266-F1). The act had passed the Legislature, and was approved by the Governor on the 10th day of March, 1934, and went into effect by publication on the 16th of that month. So that but a few months had elapsed before the litigation herein arose. The title of the act was "An Act to provide for the protection, welfare, and assistance of aged persons in need and resident in the state of Iowa, providing the method therefor, making an appropriation therefor, levying a tax, and prescribing penalties for the violation of the provisions of this act." And it contained forty-two sections.

Section 41 provided:

"1. Nothing in this act shall be construed as repealing any other act or part of an act providing for the support of the poor except insofar as inconsistent therewith, and the provisions of this act shall be construed as an additional method of supporting and providing for the aged poor. 2. This act shall be liberally construed. 3. If any provision of this act is held invalid, the validity of the remainder of the act shall not be affected thereby."

So this act evidently in the intention of the Legislature was meant to be part of the scheme for caring for the aged poor of the state of Iowa. There were various provisions in the act defining who should and who should not receive assistance under the act, and providing generally for carrying out the act. These are not of interest here.

Section 2 of the act created a commission, provided for their appointment and term of office. Section 3 of the act provided for a superintendent to be appointed by the commission, and for his salary; and the right of the superintendent to appoint a number of assistants with the approval of the commission. The next section (4) gives the commission the authority to make such rules and regulations as are necessary to carry out the provisions of the act. The fifth section of the act created an old age assistance board in each county of the state, of three members to be appointed by the board of supervisors, non-

partisan in character, one member to be the overseer of the poor, the other two to be appointed by the board of supervisors for a term of one and two years, respectively, and that at least one member of the board be a woman.

Section 6 provided:

"The members of the board as herein provided shall receive no compensation for their services as members of such board, but they shall be entitled to the *actual and necessary* traveling expenses incurred by them in properly discharging their official duties." (The italics are ours.)

This board is given the right to appoint one or more local investigators, at a salary for each to be fixed by the board. But are limited in their appointments to candidates who have passed an examination prepared by the commission as to character, training and experience the examinations to be conducted under the supervision of the superintendent; and also there was an alternate right for the board in its discretion to arrange with other public or private relief departments or agencies to use one or more of their investigators who meet the required qualifications.

The query arises whether or not this means that they might employ at a fixed salary these other investigators, or that they might occasionally use them. But that is not here for determination at this time.

The sole question for determination here is, whether or not the bill presented to the board of supervisors by the plaintiff is for an expenditure incurred under this act. Section 34 of the act provides: "There is hereby created a fund to be known as the old age pension fund to be administered by the commission, the proceeds of which shall be used to *pay the expenditures incurred under this act.*" The whole section contains 47 lines. This provision is found in the first four lines. Then follows the provisions for the creation of the fund, i. e., the levying of the $2 tax and collection thereof; and from line 41 to 47 it provides:

"All taxes collected under the provisions of this section and act shall be deposited to the credit of the old age pension fund, and shall be kept separate from the general fund of the state. On receipt of written order from the commission, the

state comptroller shall draw warrants, and/or warrant checks against the old age pension fund for any and all old age assistance payments and *other expenditures provided for in this act."* (The italics are ours.)

So if the bill presented by the plaintiff is a proper bill it was the duty not of the board of supervisors to pay it, but the duty of the commission under this act to pay it, and out of the fund, and by a warrant drawn against this fund.

This is a new statute, and in construing new statutes the rule was laid down in a leading English case decided in 1584, and referred to in 25 R. C. L. pp. 1015, 1016, section 254, Heydon's Case, 2 (III) Coke 7, 14 English Ruling Cases 816. It was resolved by the barons of the exchequer that for the sure and true interpretation of all statutes in general, four things are to be discerned and considered:

1. What was the common law before the making of the act?

2. What was the mischief and defect for which the common law did not provide?

3. What remedy the Parliament hath reserved and appointed to cure the diseases of the commonwealth?

4. And the true reason of the remedy.

The doctrine therein stated has been followed ever since. It is common sense applied to these conditions. As supporting these views, Woods v. Mains, 1 G. Greene, 275; Stephens v. Davenport & St. P. R. Co., 36 Iowa 327; State v. Sherman, 46 Iowa 415; Cosson v. Bradshaw, 160 Iowa 296, 141 N. W. 1062, Ann. Cas. 1915D, 157; Smith v. Sioux City Stock Yds. Co., 219 Iowa 1142, 260 N. W. 531. We say, what was the state of the law before the passage of the act; what was the mischief and defect for which the law did not provide; what remedy does the new act create; and what is the true reason of the remedy? At common law there was no obligation to take care of the poor, aged, and infirm. As civilization progresses we have come to the point where there are many people, be they ever so frugal and saving, in the press of competition, who fall in the race, and are deserving to be helped, for which the law as it stood before did not provide. The remedy we have made to cure this is to assure persons who have reached the age of 65 years, and who are not in the inhibited classes, that they will have an income which will perhaps not make them independent completely,

but will greatly ameliorate the inconvenience and injustice of deserving old age being left in a complete state of penury. So the language of section 34 quoted herein can bear no other construction than that this fund, known as the old age pension fund, is to be administered by the commission, and the proceeds shall be used to pay the expenditures under this act. What are the expenditures under this act that come within this phrase? Certain it is that an expenditure made necessary by the members of the county board "in their actual and necessary traveling expenses incurred by them in properly discharging their official duties" comes within the term of "expenditures" under this act. When we come to some other expenditures that may have been claimed, we perhaps reach a different question. For instance, the assessors were directed to return the names of all persons over the age of 21 years who are residents of the state. This is simply a new duty added to an office already in existence, and it has never been held that the adding of a new duty to an office already in existence adds to the pay for the office, unless there is some provision in the law for so doing, and we have none. So that this opinion is only an authority confined to the facts and simply to and in accord with the facts set forth in the petition in the action. The district court found for the plaintiff, and that Floyd county was not legally liable for the expenses and expenditures of the old age assistance commission, or its officers, investigators, or agents, and had no legal authority to allow or pay the same, or any part of same. But if legally payable can be ignored or paid only under the orders and authority of the state commission, and by warrants of the state comptroller as provided in section 35 of chapter 19 of the 45th Ex. G. A. of Iowa and section 34, as amended by Acts 46th G. A. ch. 55, section 23. And that it was not payable out of the county treasury. The learned district judge filed an opinion in this case which has been very helpful in arriving at the conclusions herein reached. We think our reasons are unassailable, and for those reasons pointed out herein, the decision of the district court is hereby affirmed.—Affirmed.

DONEGAN, C. J. and ALBERT, ANDERSON, POWERS, HAMILTON, and RICHARDS, JJ., concur.