AID INSURANCE COMPANY, an Iowa Corporation, Appellee,

v.

DAVIS COUNTY, Iowa, Appellant.

No. 87–937.

Supreme Court of Iowa.

July 20, 1988.

C.K. Pettit, Bloomfield, for appellant.

J. Hobart Darbyshire of Carlin, Hellstrom & Bittner, Davenport, for appellee.

Considered by SCHULTZ, P.J., and CARTER, NEUMAN, SNELL and ANDREASEN, JJ.

SCHULTZ, Presiding Justice.

The issue on this appeal is whether a general release purporting to discharge one tortfeasor and all others who might be liable effectively releases an unnamed or otherwise unidentified joint tortfeasor. The trial court ruled that under the terms of the release the injured parties released the unnamed tortfeasor. We disagree and reverse.

In 1983, an insured of plaintiff Aid Insurance Company was operating a motorcycle on a highway maintained by defendant Davis County. The insured negligently drove the motorcycle off the paved surface onto the shoulder of the highway, causing the motorcycle to crash. His passenger was seriously injured.

The injured party's medical bills were paid by her health insurance carrier. After plaintiff determined its insured was liable, it obtained a general release from the injured parties, made an arrangement with the health insurance carrier on its subrogation claim and paid its policy limits of $100,-000.

Plaintiff also concluded that defendant Davis County was negligent in the maintenance of its road and sent it written notice of a claim, *see* Iowa Code § 613A.5 (1987), after unsuccessfully suggesting the injured party and her spouse should make a claim against the county. Within the period of limitation, plaintiff commenced an action against the county for contribution. At trial, the jury returned a special verdict finding that plaintiff and defendant were each fifty percent at fault for the passenger's injuries. Judgment was entered against the defendant for $50,000.

During trial, defendant moved for a directed verdict on the grounds that plaintiff was not entitled to contribution because it had not discharged defendant's liability to the injured parties as required by Iowa Code section 668.6 (1985). The court overruled both defendant's directed verdict motion and its judgment notwithstanding the verdict motion made on the same grounds following the trial.

The issue in this case is but another aftereffect from our adoption of comparative negligence by judicial decision. *See Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982). The legislature responded by adopting comparative fault legislation, including Iowa Code chapter 668 (1985)[1] entitled *Liability in Tort—Comparative Fault. See* 1984 Acts ch. 1293, §§ 1–10. This chapter is a substantial adaptation of the Uniform Comparative Fault Act, approved by the National Conference of Commissioners on Uniform State Laws in 1977. Unif. Comparative Fault Act, 12 U.L.A. (cum. Annual Pocket Part 1988) pp. 37–38. This Act is designed for states that adopt comparative fault, incorporating portions of the earlier Uniform Contribution Among Tortfeasors Act. *Id.* at 38.

Our comparative fault statutes provide guidelines for contribution between tortfeasors. Contribution is permitted between two persons who are liable upon the same indivisible claim for the same harm. Iowa Code § 668.5(1). The right of contribution is available to a person who settles with a claimant "only if the liability of the person against whom contribution is sought has been extinguished and only to the extent that the amount paid in settlement was reasonable." § 668.5(2). Percentages of fault may be established by a separate action. § 668.6(2). If contribution is sought in a case where judgment has not been rendered, it is enforceable upon the condition that "the person bringing the action for contribution must have discharged the liability of the person from whom contribution is sought by payment made within the period of the statute of limitations applicable to the claimant's right of action...." § 668.6(3).

In applying these statutes, it is clear that the plaintiff seeking contribution must establish that the defendant's liability to the injured parties has been discharged. Plaintiff does so here by relying upon its release agreement. Defendant claims the release does not discharge its liability. In interpreting the effect of this release, both parties turn to Iowa Code section 668.7. This section states:

A release ... entered into by a claimant and a person liable discharges that person from all liability for contribution, *but it does not discharge any other persons liable upon the same claim unless it so provides.*

(Emphasis added.)

The parties disagree as to whether the release in question "provides" a discharge of the defendant's liability. In its preprinted boilerplate language, the release purports to discharge "all other persons, firms, or corporations, known or unknown, who are, or might be claimed to be liable...." Plaintiff maintains that this language is unambiguous and discharges defendant, as an "other ... corporation" from any possible claims. Defendant, however, urges that we interpret the statutory phrase "unless it so provides" to require the release to name or otherwise specifically identify the parties.

Defendant also injects another possible interpretation of section 668.7 by asserting that the adjustor and the injured parties had no intention of discharging the defendant's liability in the release. Plaintiff responds that ambiguity in the release must be found first before extrinsic evidence of intent may be considered.

Thus, the parties propose three possible interpretations of what section 668.7 requires when it dictates that a person is not discharged by a release "unless it so provides." First, a release with this boilerplate clause satisfies the language of section 668.7 and releases an unnamed or unidentified joint tortfeasor. Second, this

---

**1.** Unless otherwise indicated all references shall    be to the 1985 Code.

section requires a specific identification of the person discharged. Third, the statute requires that such boilerplate language would allow the introduction and consideration of extrinsic evidence to determine the intention of the parties to the release.

We first examine plaintiff's claim that the phrase "any other person, firm, or corporation" is unambiguous and discharges the liability of any other tortfeasor. It cites *Douglas v. United States Tobacco Co.*, 670 F.2d 791 (8th Cir.1982); *Ralkey v. Minnesota Mining and Manufacturing Co.*, 63 Md.App. 515, 492 A.2d 1358 (1985); and *Battle v. Clanton*, 27 N.C.App. 616, 220 S.E.2d 97 (1975), as cases referring to the Uniform Contribution Among Tortfeasors Act that hold such boilerplate language discharged remaining tortfeasors even though they were not named in the release. Plaintiff maintains these cases stand for the proposition that the language in the release is unambiguous and expressly releases all other tortfeasors from all claims arising out of the event. *Douglas*, 670 F.2d at 795; *Ralkey*, 63 Md.App. at 524–25, 492 A.2d at 1363; *Battle*, 27 N.C. App. at 621, 220 S.E.2d at 100.

We note that in each of these cases the injured party claims the release was not an effective discharge of all claims. This case has taken an unusual twist in that it is not the injured party claiming that the release is ineffective. Rather, such claim is made by another tortfeasor seeking to avoid contribution. No contention is made that defendant cannot raise this issue.

Since the adoption of section 668.7, we have not interpreted its meaning regarding the requirement of particularity to discharge another tortfeasor. In construing statutes for the first time we may look to the state of the law before enactment and search for the reasoning behind the statutory remedy. *Jones v. Dunkelberg*, 221 Iowa 1031, 1035, 265 N.W. 157, 159 (1936).

Prior to the adoption of chapter 668, we had a steady development in our common law on the effect of this type of release when the injured person claimed that there was no intention of releasing the unnamed tortfeasor. Originally, our common law recognized the principle that a full release of one joint tortfeasor satisfied, by operation of law, any claim that the injured party might have against another for the same injury. *Dungy v. Benda*, 251 Iowa 627, 636–37, 102 N.W.2d 170, 176 (1960). Under this principle, identification of any other tortfeasor on the release had no significance. Soon afterwards we reversed *Dungy*, holding that the release of an obligor does not automatically release all others who are or may be liable. *Community School District of Postville v. Gordon N. Peterson, Inc.*, 176 N.W.2d 169, 175 (Iowa 1970). When an unliquidated debt was involved, the intention of the parties to the release controlled. This intent was determined by the terms of the contract plus properly offered extrinsic evidence. *Id.* We quoted extensively from leading legal writers and other cases which pointed out the harshness of the old rule that gave tortfeasors unintended advantages. *Id.* at 172–75.

If we were to adopt plaintiff's suggestion, we would be returning to the rule that we criticized in *Postville*. Anytime a boilerplate release was used, the injured party would be barred from complaining that there was no intention to release the unnamed tortfeasors. We do not believe the legislature intended a reincarnation of the doctrine that the release of one tortfeasor releases all others by adopting the Uniform Comparative Tort Act. We choose not to follow those jurisdictions which hold that the boilerplate language in question discharges all other tortfeasors involved in the same event.

■■■ We now turn to the two interpretations suggested by the defendant. In our interpretation of section 668.7, we favor a rule which would require a written release to include some specific identification of the tortfeasors to be released in order for them to be discharged. While the easier course would require naming these parties, we would not require such a rigid rule if they are otherwise sufficiently identified in a manner that the parties to the release would know who was to be benefitted. Such designations might include such

classes as "employees," "partners" or "officers." While this rule may at times require evidentiary hearings to determine the members of the class, it provides needed flexibility. Under this rule, a general designation such as "any other person, firm or corporation" would not sufficiently identify the tortfeasor to be discharged.

We believe that valid reasons support this rule. The legislature in signifying that a release did not discharge a tortfeasor "unless it so provides" indicates that the release should contain a proviso or stipulation of the tortfeasors to be released. An interpretation which allows a general, rather than a specific designation of tortfeasors would run contrary to and defeat the requirement that the release "provide" who is to be released.

Further reasoning supports this interpretation. Requiring a party to name or otherwise identify the parties they intend to release will clarify their respective rights and will minimize the possibility of mistake regarding a release's effect. In chapter 668, the legislature carefully enumerated the various rights of the parties. Requiring specificity furthers this legislative plan.

We also find support in the cases from other jurisdictions that have adopted similar statutes. Interpretations of similar statutory language in other jurisdictions are entitled deference and usually will be followed if they appear to be sound and reasonable. *Quaker Oats Co. v. Cedar Rapids Human Rights Commission*, 268 N.W.2d 862, 866 (Iowa 1978); *Young v. City of Des Moines*, 262 N.W.2d 612, 619 (Iowa 1978). Other jurisdictions that have adopted the Uniform Contribution Act with provisions similar to section 668.7 have held that tortfeasors, other than those who bargain for the release, must be specifically identified. *Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916, 929 (Alaska 1977); *Clark v. Brooks*, 377 A.2d 365, 373 (Del. 1977); *Alsup v. Firestone Tire and Rubber Co.*, 101 Ill.2d 196, 201, 77 Ill.Dec. 738, 741, 461 N.E.2d 361, 364 (1984); *Beck v. Cianchetti*, 1 Ohio St.3d 231, 235, 439 N.E. 2d 417, 420 (1982); *Bjork v. Chrysler Corp.*, 702 P.2d 146, 162–63 (Wyo.1985);

*Robertson v. McCarte*, 13 Mass.App.Ct. 441, 444, 433 N.E.2d 1262, 1264 (1982); *Sage v. Hale*, 75 Misc.2d 256, 257–58, 347 N.Y.S.2d 416, 418–19 (1973).

The *Beck* court was faced with much the same problem that we address. Previously, the Ohio court took the same course that we took. It cast out Ohio's old common law rule, that the release of one tortfeasor released all, and adopted the doctrine that the intention of the parties to the release would govern the interpretation of it. *Whitt v. Hutchison*, 43 Ohio St.3d 53, 58, 330 N.E.2d 678, 682 (1975). As our legislature adopted the Uniform Comparative Fault Act, Ohio adopted the Uniform Contribution Act, which included the same terms that section 668.7 contains. The Ohio court interpreted the statutory phrase "unless its terms otherwise provide," to require a release expressly designate by name or otherwise specifically describe or identify any tortfeasor to be discharged. *Beck*, 1 Ohio St.3d at 235, 439 N.E.2d at 420. The *Beck* court stated that the "thrust of the section is to retain the liability of tortfeasors and, thus, the phrase 'unless its terms otherwise provide' should be narrowly construed and require a degree of specificity." *Id.* at 234–35, 439 N.E.2d at 420.

The Illinois court in *Alsup*, in regard to the same language, stated that "[w]e consider that the legislature's intendment was that under (the statute) a release was not to discharge 'other tortfeasors' from liability unless they were designated by name or otherwise specifically identified." *Alsup*, 101 Ill.2d at 201, 77 Ill.Dec. at 741, 461 N.E.2d at 364.

Even where the Uniform Act has not been adopted, the doctrine that the released joint tortfeasor must be specifically named is recognized. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420 (Texas 1984). The Texas court held under their law:

[T]he mere naming of a general class of tortfeasors in a release does not discharge the liability of each member of that class. A tortfeasor can claim the protection of a release only if the release

refs to him by name or with such descriptive particularity that his identity or his connection with the tortious event is not in doubt. *Duncan,* 665 S.W.2d at 419–20.

In summary, we believe that the legislature, in enacting section 668.7, intended to eliminate the ambiguity factor and require the identification of any tortfeasor that is to be released. We do not, at this time, state that all identification in the release must be made by the court as a matter of law without taking into account extrinsic evidence, however, such is not the case before us. Because the defendant county was not released, plaintiff may not seek contribution under sections 668.5 and 668.6. The trial court erred by overruling defendant's motions. Therefore we reverse.

REVERSED.

CARTER, Justice (dissenting).

I dissent.

I do not believe that it was the intent of section 668.7 to require that the release contain a minimum amount of written descriptive data. Indeed, I do not believe that it is even required that the release agreement be in writing. Section 668.7 is a provision taken from the Uniform Comparative Fault Act which was designed to reject the common-law rule that a release of one joint tortfeasor releases the other tortfeasors. Issues concerning matters of form in the preparation of the release agreement are clearly outside the ambit of the legislation.

The common-law rule in question was abolished in Iowa by judicial decision in 1970. *See Community School Dist. of Postville v. Gordon N. Peterson, Inc.,* 176 N.W.2d 169, 175 (Iowa 1970). The cited case permits the true intention of the releasing parties to be established as an issue of fact and allows extrinsic evidence to be considered for this purpose. I would continue to view the issue as one of fact under section 668.7 and permit extrinsic evidence on the intention of the parties. If this standard is applied in the present case, the broad language in the release which refers to "all other persons, firms, or corpora-

tions, known or unknown, who are, or might be claimed to be liable" presents a prima facie case that all joint tortfeasors were being released. I therefore do not agree that the county was entitled to a directed verdict.