# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 96-3094

_____

Frederick Darnell Moore,   *
                  *
     Appellant,     *
                  *
   v.            * Appeal   from   the   United States
                  * District Court for the
Mitchell Novak, Correctional Officer;   * District of Nebraska

Craig Schmidt, Correctional Officer,   *
                  *
     Appellees.     *

_____

Submitted:    March 14, 1997

Filed:    May 22, 1998

_____

Before McMILLIAN, FLOYD R. GIBSON,[1] and HANSEN, Circuit Judges.

_____

_____

[1]At the panel's conference on March 14, 1997, following oral argument of the case, Judge Floyd R. Gibson concurred in the result reached in this opinion. Judge Gibson has been disabled by illness from reviewing the opinion, which is being filed in the interest of avoiding undue delay.

McMILLIAN, Circuit Judge.

Frederick Darnell Moore appeals from a final judgment entered in the District Court[2] for the District of Nebraska, following a bench trial, in favor of defendants Mitchel Novak and Craig Schmidt, in his 42 U.S.C. § 1983 civil rights action. Moore v. Novak, No. 4:CV94-3328 (D. Neb. June 27, 1996) (memorandum of decision). For reversal, Moore argues the district judge's findings of fact are clearly erroneous. For the reasons discussed below, we affirm the judgment of the district court.

The district court had subject matter jurisdiction over this civil rights action under 28 U.S.C. § 1343; the notice of appeal was timely filed as required by Fed. R. App. P. 4(a), and this court has appellate jurisdiction under 28 U.S.C. § 1291.

This case was tried before a magistrate judge pursuant to the consent of the parties under 28 U.S.C. § 636(c). Jury trial was waived. The trial took two days. The following statement of facts is taken in large part from the memorandum opinion of the magistrate judge.

In the early morning hours of September 10, 1993, Lincoln police officer Terri Lobdell arrested Moore in connection with a burglary investigation. Lobdell handcuffed Moore and transported him to the Lancaster County jail. Moore was intoxicated and loudly asked Lobdell about personal property he claimed had been taken

---

[1]The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska. The parties consented to trial of the case before a magistrate judge pursuant to 28 U.S.C. § 636(c).

from him.  Upon arriving at the jail, Lobdell drove to the garage door.  Novak, a jail correctional officer, saw Lobdell's patrol car approach on a surveillance video monitor and pressed a switch to open the garage door. Once inside the garage, Lobdell got out of the patrol car, picked up Moore's personal property, and removed Moore from the rear seat.  Lobdell walked Moore to the jail entrance door.  Moore continued

to ask Lobdell about his personal property.  Novak saw Lobdell and Moore on the surveillance video monitor and pressed a switch to open the jail entrance door.  Lobdell and Moore went through the door and into the elevator.  When they got off the elevator, Lobdell was slightly behind Moore and to his right.  Moore's hands were handcuffed behind his back.  Lobdell held Moore's personal property in her right hand and Moore's upper right arm in her left hand.  They walked down a hallway to one of the doors to the jail booking area.  As they approached the door, Moore began to shout at Lobdell.  Novak could see Moore and Lobdell through the glass windows next to the door to booking area.  Novak pressed a switch to open the door.  Lobdell released Moore's arm, shifted Moore's personal property to her left hand, and opened the door with her right hand.  Moore and Lobdell walked through the door.

Novak picked up a Polaroid camera and walked toward the door.  He was preparing to take a photograph of Moore as part of the booking process.  Lobdell told Moore to stand on a square painted on the floor so Novak could take his photograph.  Moore shouted an obscenity at Lobdell and kicked her in the leg, knocking her backwards.  Novak grabbed Moore from behind and told him to calm down.  Moore continued to shout and struggle.  Schmidt, a jail correctional officer, was working at a computer in the booking area.  He heard shouting and went to help Novak and Lobdell.  Schmidt grabbed Moore's right arm; Novak held Moore's left arm.  They turned him toward the booking counter and told him to drop to his knees.  Moore refused and continued to struggle.  Schmidt removed his "stun" gun, displayed it to Moore and warned Moore

that he would use it if Moore did not comply with their commands.  Moore shouted more obscenities and continued to struggle and attempt to break free.  Schmidt then applied the stun gun to Moore's lower back for three to five seconds.  Moore bent over and Schmidt withdrew the stun gun.  Novak and Schmidt forced Moore to the floor.

By this time, another jail correctional officer, Jason Hellmuth, had come to help Novak and Schmidt. Moore was on the floor.  Another jail correctional officer,

Margaret Vaske, performed a pat down search and removed more personal property. The four correctional officers placed Moore in a safety cell; Novak removed the handcuffs and asked Moore if he needed medical assistance. Moore did not respond. Novak repeated the question; Moore told Novak that he was fine and refused medical assistance. Moore remained conscious throughout the entire incident. Novak and Schmidt reported the incident to shift supervisor Shauna Baird. Baird had seen the four correctional officers holding Moore down on the floor. Baird told Novak and Schmidt to write reports about the incident.

A surveillance video camera in the booking area had recorded the incident. Baird stopped the video cassette recorder (VCR), rewound the videotape, and played back the videotape on the video monitor. Baird testified that Novak was standing beside her when she played back the videotape and that she assumed he watched it at the same time. Baird concluded that the officers had complied with department policy regarding the use of force and stun guns. Baird testified that the videotape did not show the actual use of the stun gun or defendants' "body-slamming" Moore to the floor. Baird then rewound the videotape, removed it from the VCR and then either handed it to investigating officer Ann Lubow (her name was Foster at the time of trial) or placed the videotape on the booking counter for Lubow to use in her investigation. Novak testified that he never viewed the videotape. Lubow wrote a report about the incident based on statements from Lobdell and Novak. Lubow testified that she did not take the videotape. The videotape

disappeared and, despite repeated attempts to locate it, was still missing at the time of trial.

Moore was charged and convicted in state court with assaulting a police officer. His conviction was affirmed by the state court of appeals; further review by the state supreme court was denied.

Moore then filed this 42 U.S.C. § 1983 civil rights action in federal district court, alleging Novak and Schmidt used excessive force in restraining him, Novak was

motivated by racial animus in violation of the equal protection clause, and Novak either destroyed or secreted the surveillance videotape of the incident, thus making it unavailable for use in his state criminal trial, in violation of the due process clause. Moore did not challenge his arrest and admitted that he was intoxicated and verbally abusive. However, he denied that he had intentionally kicked Lobdell. He alleged that, even though he is a medium-sized person and his hands were handcuffed behind his back, Novak shouted a racial slur at him, grabbed him by the handcuffs and one arm, lifted him up, and then threw him to the floor. He alleged that Schmidt wrongfully used the stun gun against his neck, when he was handcuffed and being held down on the floor, until he lost consciousness. He sought compensatory and punitive damages, costs and expenses, and attorney's fees.

Following a bench trial, the district court found that Novak and Schmidt did not use excessive force in restraining Moore. Slip op. at 10-12. The district court specifically found that both the decision to use force and the amount or degree of force used-- physical restraint and use of the stun gun-- were objectively reasonable because Moore was not under control, even though he was handcuffed, and represented a continuing threat to his physical safety and that of the officers. Moore was intoxicated, agitated, verbally abusive, had kicked a police officer, repeatedly refused to comply with officers' legitimate commands, continued to struggle, and attempted to break free. Id. The district court expressly credited the testimony of the officers and expressly rejected Moore's version of the incident,

including his allegations that Novak threw him to the floor, Novak used racially derogatory language, and Schmidt wrongfully used the stun gun. Id. at 4 & nn.4-5, 5-6 & n.7, 8 & n.9, 12 & n.12 (jail policy bars use of stun gun when inmate is "restrained and controlled" and lists "handcuffed" as example of when inmate could be considered "restrained and controlled"; however, officers testified that Moore was not "controlled" despite being handcuffed). The district court also found there was no evidence of racial discrimination, id. at 13, and that Moore's due process claim was barred because a finding that Novak had destroyed or secreted the videotape would necessarily imply the invalidity of Moore's criminal

conviction, which had not been reversed, expunged, invalidated, or otherwise called into question.  <u>Id.</u> at 14-15, <u>citing Heck v. Humphrey</u>, 512 U.S. 477 (1994).  This appeal followed.

For reversal, Moore argues the district court's findings of fact are clearly erroneous.  He argues we should not defer to the district court's credibility determinations because defendants' version of the incident was so internally inconsistent and implausible on its face that a reasonable factfinder would not have credited it.  He also argues that the unexplained absence of the surveillance videotape raised a clear inference that it would have supported his version of the incident.

We review the district court's findings of fact under the clear error standard of review set forth in Fed. R. Civ. P. 52(a) and clarified by the Supreme Court in <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564 (1985) (<u>Anderson</u>).  "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1948).

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.  Where there are two permissible views of the evidence, the

factfinder's choice between them cannot be clearly erroneous.

> . . . .

> When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's

understanding of and belief in what is said. This is not to suggest that the trial judge may insulate his [or her] findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination. But when a trial judge's finding is based on his [or her] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

Anderson, 470 U.S. at 574-75 (citations omitted); see, e.g., FDIC v. Lee, 988 F.2d 838, 841-42 (8th Cir. 1993).

In the present case the district court correctly applied the Fourth Amendment "objective reasonableness" test to Moore's excessive force claim. Slip op. at 9 & n.11; see, e.g., Graham v. Connor, 490 U.S. 386, 394-95 (1989) (holding all claims that law enforcement officers used excessive force in course of arrest, investigatory stop or other seizure of a free citizen should be analyzed under Fourth Amendment standard of objective reasonableness rather than substantive due process). "The question for the [factfinder] is whether, judging

from the perspective of a reasonable officer at the scene of the arrest, the totality of the circumstances justifies the use of the force used." <u>Foster v. Metropolitan Airports Comm'n</u>, 914 F.2d 1076, 1081 (8th Cir. 1990) (plaintiff claimed officers used excessive force in making arrest). "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." <u>Id.</u>

Applying the above standard, the district court found that defendants' decisions to use force and the amount of force used under the circumstances were objectively reasonable. The district court found that Moore was intoxicated, agitated, refused to comply with commands, kicked the arresting officer, continued to struggle and attempt to get away, and posed an immediate threat to his own safety and to the safety of the officers. The district court specifically rejected Moore's claims that Novak threw him to the floor by the handcuffs and that Schmidt used the stun gun improperly or in a manner inconsistent with department policy. But for the missing videotape, our review of the district court's findings of fact would be straightforward. Each party presented a different story of the incident, primarily through the testimony of witnesses; the stories were in sharp conflict; the district court made credibility determinations and believed defendants' version of the incident. Their testimony told a coherent and facially plausible story. Ordinarily, such a finding based on credibility determinations can "virtually never be clear error." Anderson, 470 U.S. at 575. However, Moore argues that defendants' story would have been contradicted by extrinsic evidence-- the missing videotape. Moore argues the fact that the videotape is missing raised an inference that the videotape would have supported his version of the incident.

The circumstances surrounding the disappearance of the videotape are suspicious but not necessarily sinister. The most the record shows is that the personnel at the jail had control of the videotape and that the videotape has been misplaced or lost. Even if we assume for

purposes of analysis that the fact that the videotape is missing raised an inference in favor of Moore's version of the incident, Baird's testimony about the videotape sufficiently rebutted this inference. According to Baird's testimony, the videotape did not contradict defendants' version of the incident. Baird testified that the videotape showed Moore making a movement toward Lobdell as they walked through the door and showed Novak and Schmidt restraining Moore and "taking him to the ground to control him." She also testified that she did not recall that the videotape showed either defendants' "body-slamming" Moore to the floor or using the stun gun and that she would have remembered such conduct had it appeared on the videotape.

Baird also testified that, after reviewing the videotape, she had concluded that the officers had complied with department policy regarding both the use of force and the use of the stun gun.  Under these circumstances, we cannot conclude that the district court's findings of fact are clearly erroneous.

Finally, Moore argues that the destruction or secreting of the videotape violated his right to due process during his state criminal trial.  Brief for Appellant at 21.  We agree with the district court that, because Moore did not prove that his state conviction had been independently invalidated, his § 1983 claim for damages is barred by Heck v. Humphrey, 512 U.S. at 484-87.  Slip op. at 13-15, citing Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1996) (holding judgment in favor of plaintiff based on finding that defendant violated plaintiff's constitutional rights by altering and destroying evidence relevant to charges against him would necessary imply invalidity of subsequent convictions and would be barred by Heck v. Humphrey unless plaintiff proves his convictions or sentences have been reversed, expunged, invalidated, or otherwise called into question).  The district court did not err in dismissing Moore's due process claim.

Accordingly, the judgment of the district court is affirmed.

A true copy.

    Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.