# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1962

_____

|  |  |  |
|---|---|---|
| Nash Finch Company, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Nebraska. |
| Rubloff Hastings, L.L.C., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  January 16, 2003

Filed:   August 28, 2003
_____

Before HANSEN,[1] Chief Judge, BRIGHT, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

This case involves a dispute over the exclusive right to sell groceries and alcoholic products–on a carry-out basis–within the Imperial Mall Shopping Center in Hastings, Nebraska. Nash Finch Company ("Nash") brought a contract action

_____

[1] The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

against Rubloff Hastings, LLC ("Rubloff") to enforce an exclusive-use provision contained in Nash's lease. The district court[2] granted judgment to Rubloff, concluding that Rubloff was a bona-fide purchaser without notice of an erroneous property description in the original lease. On appeal, Nash argues that the assignee of a lease cannot be a bona-fide purchaser without notice. Alternatively, Nash argues that reformation is required due to mutual mistake and that Rubloff breached the exclusive-use provision. For the reasons stated below, we affirm the district court.[3]

## I. *Background*

Nash entered into two lease agreements with a commercial property developer to operate a grocery store and a liquor store in the Imperial Mall Shopping Center ("Imperial Mall"). The lease contained two explicit exclusive-use provisions. Section 19 of Nash's grocery store lease states:

> Landlord agrees that during the term of this Lease and any extensions hereof, it will not permit the use of any space within the shopping center (other than the leased premise) for retail grocery, fresh meat market or bakery sales. Landlord will not permit the use of any space within that portion of the shopping center depicted on Exhibit B for a church, a dance studio, or pavilion, a bowling alley, a community hall, theatre [sic], on-sale beer or liquor establishment, nor an amusement arcade.

---

[2] The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

[3] Nash also claims that the district court committed reversible error by (1) permitting the addition of unidentified witnesses; (2) allowing a new defense to be advanced "days before trial"; (3) countenancing appellee's belated disclosure of unidentified documents; and (4) denying Nash's post-judgment motion for new trial. Having carefully considered these arguments we conclude that each is without merit, and reject them without further discussion. *See* 8th Cir. R. 47B.

Section 25.2 of Nash's liquor store lease reads:

> Tenant shall have the exclusive right to sell liquor, beer, wine, and other alcoholic products on an "off sale basis," i.e., for customer carryout. This exclusive right is specifically agreed to include the entire Landlord Tract and Parcel C, if owned or controlled by the landlord.

The mall property changed hands several times during Nash's tenancy. Eventually, Rubloff took assignment of the Imperial Mall leases. As part of its assignment, Rubloff executed an assumption agreement in which Rubloff agreed to perform all of the terms, covenants, and conditions of the assigned leases. Rubloff then acquired the Imperial Mall complex by a special warranty deed.

Conflict arose between Nash and Rubloff when a new tenant, Kmart, opened a "Big K" store in the Imperial Mall. Big K's lease granted it the authority to use the leased premises (located in the southern portion of the Imperial Mall's main building) for any lawful purpose. Big K sold groceries and package liquor within the Imperial Mall Shopping complex. Nash filed suit. Rubloff defended the suit and contended that at the time it purchased the property, the exclusivity provisions did not apply to the portion of the mall it leased to Kmart. It is undisputed that the legal description[4] in Nash's leases did not contain the space leased to Kmart.

Nash claims that the two exclusivity provisions–outlined above–grant it the exclusive right to sell retail groceries, fresh meats, bakery items, and packaged liquor in the entire Imperial Mall complex. It further claims that the exclusivity clauses contained in the leases were violated when Big K began selling retail groceries and package liquor. Specifically, Nash argues that the exclusivity provision of each lease

---

[4] Each of Nash's leases contains the same legal description for the shopping center.

applies to the entire shopping center and is not limited to the northwest one-third of the shopping center, which corresponds with the legal description of the shopping center that is attached to the leases. Nash urges us to either find that the exclusivity provisions cover the entire complex–despite the legal description of only a portion of the complex–or order reformation based on mutual mistake.

Rubloff denies breaching the exclusivity clauses at issue and claims that the scope of Nash's exclusive rights is expressly limited to the portion of the property described in the leases. Rubloff further argues that–assuming a mutual mistake existed between the original parties–reformation is not a proper remedy, based on its status as a bona-fide purchaser, for value, without notice of the mistake.

## II. *Discussion*
### A. *Mutual Mistake and Reformation*

Nash must first establish that a mutual mistake existed under Nebraska law. *Haines v. Menden*, 446 N.W.2d 716, 719 (Neb. 1989).[5]A mutual mistake is a belief shared by the parties that is not in accord with the facts. *Eisenhart v. Lobb*, 647 N.W.2d 96, 108 (Neb. App. 2002). The mistake must be common to both parties–each party laboring under the same misconception about the instrument. *Id.* Mutuality of mistake exists when there has been a meeting of the minds of the parties–and an agreement actually entered into–but the agreement in its written form does not express what was really intended by the parties. *Id.* If incorrect language or wording is mistakenly inserted into an instrument that is intended to reflect the agreement of the parties, including a scrivener's mistake, such mistake is mutual and contrary to the real intention and agreement of the parties. *Id.*

---

[5] Both leases provide that they are to be construed in accordance with Nebraska law.

-4-

In order for a contract to be reformed on the ground of mutual mistake, the burden is on the party alleging the mistake to prove that the written instrument does not fully state the agreement or intention of the parties. *Id*. at 109. In order to justify reformation of a written instrument, proof that is clear, convincing, and satisfactory is required. *Id*. "Clear and convincing evidence" is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *Id.*

The district court agreed with Nash that the inaccuracy in the legal description attached to the leases was caused by a mutual mistake. The court concluded that Nash had established–by clear and convincing evidence–that the original parties to the leases intended the exclusivity provisions of each lease to apply to the entire shopping center. However, the district court's finding as to the original lease, which involved only one of the original parties, does little to resolve the current dispute: whether the assignee of the lease is subject to the reformation remedy available against the original lessor.

As noted by the district court, the general rule is that a contract, once reformed, relates back–in its effective form–to the original date of execution. *Gurske v. Strate*, 87 N.W.2d 703, 705 (Neb. 1958). However, special circumstances exist when attempting to enforce a reformed contract against a subsequent purchaser that was not a party to the original agreement. A reformed contract is not effective against a bona-fide purchaser for value–subsequent purchasers without notice of the mistake. *Id*. If, however, a bona-fide purchaser for value has either actual or constructive notice of a mistake, it is charged with knowledge of all facts that an inquiry into the matter would have revealed. *Winberg v. Cimfel*, 532 N.W. 2d 35 (Neb. 1995). The party resisting reformation bears the burden of proving that it is a bona-fide purchaser for value. *Miller v. Vanicek*, 184 N.W. 132, 134 (Neb. 1921).

B. *Bona-Fide Purchaser for Value*

Nash argues that Rubloff should not be considered a bona-fide purchaser for value. Nash avers that Rubloff was not a true purchaser or, alternatively, if a purchaser, did not take possession without notice of the legal description error. We disagree on both points.

As to Rubloff's purchaser status, there is no dispute that Rubloff purchased the property occupied by Nash for value. However, Nash argues that because Rubloff was assigned the leases, they were not the product of a purchase. Nash then argues that the equitable remedy of reformation is available against Rubloff as a mere "assignee" of the leases. Nash's arguments follow basic assignment theory–that an assignee gets no greater rights than the assignor had. The district court found that the leases were assigned to Rubloff pursuant to the purchase agreement and were "for value." Specifically, the court concluded that the evidence showed that the assignment and purchase were not separate transactions, but were a combined twelve-million-dollar "deal."

Factual findings after a bench trial are reviewed under the "clearly erroneous" standard of Federal Rule of Procedure 52. *Moore v. Novak*, 146 F.3d 531, 534–35 (8th Cir. 1998). A finding is "clearly erroneous" only when the reviewing court has "the definite and firm conviction that a mistake has been committed upon consideration of the entire record." *Id.* "'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75 (1985)). The district court's conclusion that Rubloff acquired the leases for value was not clearly erroneous.

As to notice, Nash argues that Rubloff should have been aware of the mistake in the legal description attached to the leases. Specifically, Nash contends a legal description of the "shopping center" that covered only a portion of the Imperial Mall

was not rational. Such a description would have put a reasonable person on notice of the error. Faced with this descriptive peculiarity, Nash argues that Rubloff should have conducted a diligent inquiry into the scope of the exclusivity provisions and should be charged with all of the knowledge that the inquiry would have revealed.

The district court disagreed and found that at the time Rubloff entered into negotiations to purchase the Imperial Mall Rubloff received–and its current president reviewed–copies of Nash's leases. After the initial review, Rubloff sought–and obtained–a certificate from Nash confirming the validity and accuracy of the lease agreements. The district court concluded that any mistake as to the scope of the exclusivity provisions was due to Nash's failure to check and correct the description of the shopping center as contained in the leases.

The court also concluded that the legal description was not–on its face–an irrational limitation on the scope of the exclusives. In support of its finding, the court noted that Nash originally sought to lease a different property (in the portion of the mall area included in the legal description attached to its lease) to operate its grocery store and had concerns about the property in the northern portion of the shopping center being occupied by a competing grocery store. The district court also noted that the particular area of the complex that was covered by the exclusives provided Nash controlled access to 12th Street, and an aviation easement provided a clear view of the Nash store. Thus, the court concluded that, despite the limited scope of the exclusive-use provisions, Nash received tangible benefits from the provisions, thus the provisions were rational.

Given the evidence before it, we conclude that the district court's findings related to Rubloff's bona-fide purchaser status are not clearly erroneous. Rubloff was not on notice of the mistake contained in the legal description addendum to the leases. Rubloff took sufficient reasonable steps to determine the scope of the exclusivity clause and to ensure the accuracy of the leases it assumed. *See Grand Island Hotel*

*Corp. v. Second Island Dev. Co.*, 214 N.W.2d 253, 257 (Neb. 1974). Rubloff was unaware of the mistake contained in the leases and was therefore a bona-fide purchaser of the leasehold interest, taking the interest free of any undisclosed equities. Accordingly, the leases may not be reformed against Rubloff, despite the mutual mistake of the original parties to the contract.

## C. *Ten-Mile Provision*

As a separate argument, Nash argues that Rubloff breached the lease by permitting the Big K in Imperial Mall to sell grocery items. Nash cites the lease provision stating that "the landlord is to have no financial interest in any retail grocery operation within a 10-mile radius." According to Nash, because Rubloff received rent from Big K, Rubloff had a financial interest in a retail grocery operation in violation of the lease. Nash, however, incorrectly characterizes this lease provision, which provides:

> Landlord, as further consideration for Tenant entering into this Lease, agrees that as long as the Leased Premises are occupied by Tenant, its successor or assigns for a retail food store, Landlord will not hold stock of a closed corporation or have any financial interest in a retail food store greater than 10,000 square feet within a radius of ten (10) miles from the Leased Premises.

Words in a contract are given their plain, ordinary meaning. *Daehnke v. Nebraska Dep't of Soc. Servs.*, 557 N.W.2d 17, 21 (Neb. 1996). The reasonable reading of this provision is that it prevents the landlord from having an ownership interest in a "retail food store." It does not prevent the landlord from merely accepting rents generated from stores selling food items. At trial a Nash representative–who helped negotiate the lease terms–testified that the intent of this provision "was to ensure that [the landlord would] not be involved in building a supermarket or a strip center or anything within a ten-mile radius." He explained that this provision only applied to "another supermarket within that range."

Nash's proposed construction of this provision is contrary to its plain and ordinary meaning. The facts do not establish that Rubloff has an ownership interest in a retail grocery store within a ten-mile radius of Nash's grocery store.

For the foregoing reasons, we affirm.

A true copy.

　　　Attest:

　　　CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.