# IN THE COURT OF APPEALS OF IOWA

No. 15-0364
Filed April 27, 2016


**NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, as subrogee of FARMERS COOPERATIVE COMPANY,**
    Plaintiff-Appellant,

vs.

**PGI INTERNATIONAL, SQUIBB-TAYLOR, INC., COX MANUFACTURING COMPANY d/b/a DALTON AG PRODUCTS, INC., and CNH CORP. a/k/a CNH AMERICAN, LLC a/s/o DMI, INC.,**
    Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Boone County, Michael J. Moon, Judge.


        Nationwide Agribusiness Insurance Company appeals following the district court's grant of the Appellees' respective summary judgment motions on Nationwide's contribution claim. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        Mark R. Bradford of Bassford Remele, P.A., Minneapolis, Minnesota, and David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellant.

        Mark W. Thomas and Laura N. Martino of Grefe & Sidney, P.L.C., Des Moines, for appellee PGI International.

Jeff H. Jeffries and Michelle R. Rodemyer of Hopkins & Huebner, P.C., Des Moines, for appellee Squibb-Taylor, Inc.

Stephen E. Doohen of Whitfield & Eddy, P.L.C., Des Moines, for appellee Cox Manufacturing Company d/b/a Dalton Ag Products, Inc.

Daniel A. Haws, St. Paul, Minnesota, and Thomas J. Cahill of Cahill Law Offices, Nevada, for appellee CNH Corp. a/k/a CNH America, L.L.C. a/s/o DMI, Inc.

Heard by Potterfield, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Nationwide Agribusiness Insurance Company (Nationwide) appeals following the district court's grant of the Appellees'[1] respective summary judgment motions on Nationwide's contribution claim.

## I.      Background Facts and Proceedings

In October 2011, Richard Shaw died as a result of a tragic farming accident. Richard's son, Michael, was also injured in his attempt to rescue his father. In November 2012, Farmers Cooperative Company (FCC) and its insurer, Nationwide, paid approximately $4 million to the Shaw family to settle the resulting claims. As part of that settlement, the Shaw family executed releases. In June 2013, Nationwide, as subrogee of FCC, filed suit against the Appellees, seeking contribution for the amounts paid to the Shaw family. In August 2014, the Appellees filed their respective motions for summary judgment, arguing collectively that Nationwide could not seek contribution because the releases signed by the Shaw family failed to discharge the liability of the Appellees. By order dated January 28, 2015, the district court granted the Appellees' respective motions for summary judgment. Nationwide appeals.

## II.      Scope and Standard of Review

Our review of the district court's grant of summary judgment is for correction of errors of law. *See Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013).

---

[1] PGI International, Squibb-Taylor, Inc., Cox Manufacturing Company d/b/a Dalton Ag Products, Inc., and CNH Corp. a/k/a CNH American, LLC a/s/o DMI, Inc. are collectively referred to herein as "the Appellees."

> A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the record reveals a conflict only concerns the legal consequences of undisputed facts. When reviewing a court's decision to grant summary judgment, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact.

*Id.* at 139-40 (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96-97 (Iowa 2012)). "[A] 'factual issue is "material" only if "the dispute is over facts that might affect the outcome of the suit."'" *Peak v. Adams*, 799 N.W.2d 535, 542 (Iowa 2011) (quoting *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 717 (Iowa 2001)). The burden rests with the movant to show the nonexistence of a material fact. *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008). However, "[t]he resisting party must set forth specific facts showing that a genuine factual issue exists." *Peak*, 799 N.W.2d at 542 (quoting *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993)). "[A] fact question is generated if reasonable minds can differ on how the issue should be resolved." *Pillsbury*, 752 N.W.2d at 434; *see also Bank of the W. v. Kline*, 782 N.W.2d 453, 456-57 (Iowa 2010).

## III. Analysis

In its appeal, Nationwide contends the district court erred in granting summary judgment, arguing (1) the release unambiguously discharges the Shaws' claims against the Appellees; (2) extrinsic evidence establishes the release unambiguously discharges the Shaws' claims against the Appellees; (3) conversely, if the release does not unambiguously discharge claims against the Appellees, there is an ambiguity in the release and thus extrinsic evidence

should be considered; and (4) if the release does not discharge claims against the Appellees, the contract should be reformed to reflect the true intent of the parties.

### A. The Release

Enforcement of the releases at issue is governed by contract law principles. *See Peak*, 799 N.W.2d at 543. Contract "[i]nterpretation is the process for determining the meaning of the words used by the parties in a contract." *Pillsbury*, 752 N.W.2d at 435. Absent consideration of extrinsic evidence, the interpretation of a contract is a legal issue. *Id.* "[C]onstruction of a contract is the process a court uses to determine the legal effect of the words used" and is always reviewed as a legal issue. *Id.* at 436-37.

"The cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract." *Id.* at 437; *see also Peak*, 799 N.W.2d at 543 ("In the construction of written contracts, the cardinal principle is that the intent of the parties must control . . . ." (quoting Iowa R. App. P. 6.904(3)(n))). Though "[t]he most important evidence of the parties' intentions at the time of contracting is the words of the contract," the court "may look to extrinsic evidence, including 'the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties.'" *Peak*, 799 N.W.2d at 544 (citation omitted); *see also Pillsbury*, 752 N.W.2d at 436 ("[A]lthough we allow extrinsic evidence to aid in the process of interpretation, the words of the agreement are still the most important evidence of the party's intentions at the time they entered into the contract."). Further, we interpret a

contract as a whole, *see Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991), so as to give effect to all provisions, *see Carter v. Bair*, 208 N.W. 283, 283 (Iowa 1926).

Nationwide contends the releases clearly and unambiguously establish the parties' intent to release all claims against the Appellees. This contention requires consideration of contribution claims under Iowa law.

Iowa Code section 668.5(1) (2013) provides "[a] right of contribution exists between or among two or more persons who are liable upon the same indivisible claim for the same injury, death, or harm, whether or not judgment has been recovered against all or any of them." Where, as here, the party seeking contribution has settled with the claimant, contribution is available "only if the liability of the person against whom contribution is sought has been extinguished." Iowa Code § 668.5(2); *see also Haut v. Frazer*, No. 14-0537, 2014 WL 6721258, at *1-2 (Iowa Ct. App. Nov. 26, 2014) (affirming the grant of summary judgment where the party seeking contribution failed to establish the injured party had discharged the third party's liability).

In the case of a release, Iowa Code section 668.7 governs: "A release . . . or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides." The Iowa Supreme Court has interpreted the "unless it so provides" clause as "requir[ing] the identification of any tortfeasor that is to be released." *Aid Ins. Co. v. Davis Cty.*, 426 N.W.2d 631, 635 (Iowa 1988). While noting "the easier course would require naming these parties," the court did not require such a rigid rule when the

released parties "are otherwise sufficiently identified in a manner that the parties to the release would know who was to be benefitted." *Id.* at 633.

In so finding, the *Aid* court reasoned:

> The legislature in signifying that a release did not discharge a tortfeasor "unless it so provides" indicates that the release should contain a proviso or stipulation of the tortfeasors to be released. An interpretation which allows a general, rather than a specific designation of tortfeasors would run contrary to and defeat the requirement that the release "provide" who is to be released.
> . . . Requiring a party to name or otherwise identify the parties they intend to release will clarify their respective rights and will minimize the possibility of mistake regarding a release's effect.

*Id.* at 634.

Here, the releases provide,[2] *inter alia*, that in consideration for the settlement amounts received, the Shaws

> release, acquit, and forever discharge [FCC] and its insurer, [Nationwide], and all of their employees, agents, volunteers, officers, directors, insurers, reinsurers, successors, related companies, predecessors and assigns ("the Settling Parties"), from all actions, causes of action, claims, demands, damages, costs, expenses, and compensation.

The releases further indicate they

> contemplate[] any and all actions, causes of action, claims, demands, and losses that were, or that could have been, pursued, embraced and litigated as a result of the Accident. The Shaws hereby further covenant and agree that they will not institute in the future any complaints, suits, actions, causes of action, in law or in equity against the Settling Parties, for or on account of any damages, loss, injury or expenses in consequence of the Accident, known, or unknown, past, present or future.

---

[2] Michael Shaw signed a separate release from the rest of the Shaw family. The quotations are taken from the release signed by the rest of the Shaw family. In Michael's release, the quoted portions are substantively the same, with statements made in the singular rather than the plural.

Of crucial import, not a single reference is made in either release regarding *the discharge* of a third party's liability. To the contrary, the releases are uniquely and specifically targeted to "the Settling Parties"—of which there is no dispute, and the releases clearly provide, the Appellees are not members. *See generally Maytag Co. v. Alward*, 112 N.W.2d 654, 656 (Iowa 1962) (noting "the rule expressio unius est exclusio alterius—the expression of one thing of a class implies the exclusion of others not expressed" is applied "in the construction of contracts as well as statutes").

The releases do contain provisions requiring the Shaws to "cooperate fully with all reasonable efforts of the Settling [P]arties to pursue contribution, indemnity, subrogation or any other claims against third parties to whatever extent possible, including the provision of truthful testimony at a deposition and/or trial in the subsequent litigation." These clauses, however, stand only for the proposition the Shaws will comply with their obligation to assist in these suits *insofar as they exist*; they do not purport to create an independent right for Nationwide to pursue these causes of action. Further, there is no proviso that the Shaws have waived or discharged their rights insofar as those rights might estop Nationwide from pursuing the above enumerated claims.

The instant releases are even less inclusive in identifying purportedly released third-parties than the boiler-plate releases rejected in *Aid*—which discharged liability as to "all other persons, firms, or corporations, known or unknown, who are, or might be claimed to be liable"—and its progeny. *Aid*, 426 N.W.2d at 632; *see also Britt-Tech Corp. v. Am. Magnetics Corp.*, 463 N.W.2d 26, 29 (Iowa 1990) (finding the boiler-plate release that discharged liability of "all

other persons, firms or corporations, known or unknown" did not satisfy the specificity requirements established in *Aid*). Ultimately, any reference to—let alone the requisite "specific identification" of—a discharged third party is wholly absent.

To avoid this facial omission, Nationwide seeks to enter extrinsic evidence establishing the parties' intent to discharge the Shaws' claims against the Appellees. Nationwide provides sworn affidavits from the Shaws, a sworn affidavit from the Shaws' attorney, amended releases, and deposition testimony and settlement notes from a Nationwide representative, all of which support Nationwide's contention the releases were meant to discharge the Shaws' claims against the Appellees. These extrinsic documents, however, serve only *to alter* the otherwise unambiguous language of the releases and are thus inadmissible. *See Wellman Sav. Bank v. Adams*, 454 N.W.2d 852, 856 (Iowa 1990) (finding extrinsic evidence could not be introduced "to vary, add to, or subtract from a written agreement" where extrinsic evidence sought to be introduced went to the intent of a contracting party); *Bankers Trust Co. v. Woltz*, 326 N.W.2d 274, 276 (Iowa 1982) ("The offer of extrinsic evidence was not an attempt to interpret the language actually used by the parties; it was an attempt to vary or alter language in the written agreement, and as such was inadmissible. Extrinsic evidence offered to show 'what the parties meant to say' instead of 'what was meant by what they said' is not admissible . . . ." (citations omitted)); *Uhl v. City of Sioux City*, 490 N.W.2d 69, 73 (Iowa Ct. App. 1992) ("It goes without saying that

[extrinsic evidence] cannot be used to vary or alter language in the written agreement.").[3]

Here, the unambiguous language of the releases does not sufficiently identify the Appellees as discharged parties as required by Iowa law and jurisprudence. *See Aid*, 426 N.W.2d at 633-35.[4]  We affirm the district court's conclusion the releases are unambiguous and, per those unambiguous terms, do not discharge liability as to the Appellees.

**B. Reformation**

Nationwide argues the district court erred in granting summary judgment on its request that the court reform the releases to reflect the intent of the contracting parties.

"Iowa law permits reformation of a written agreement that fails to reflect the 'true agreement' between the parties."  *Peak*, 799 N.W.2d at 545 (citation omitted); *see also State, Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 151 (Iowa 2001) ("When the understanding of the parties was not correctly expressed in the written contract, equity exists to reform the contract to properly express the intent of the parties.").  To warrant reformation, there must be

> a definite intention or agreement on which the minds of the parties
> had met [that] preexisted the instrument in question.  There can be

---

[3] We further note, the releases purport to be "the entire agreement between the parties hereto."  "When the parties adopt a writing or writings as the final and complete expression of their agreement, the agreement is fully integrated." *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011).  "When an agreement is fully integrated, the parol-evidence rule forbids the use of extrinsic evidence introduced solely to vary, add to, or subtract from the agreement." *Id.*

[4] Nationwide requests, in the alternative, that we overturn the court's holding in *Aid*.  We are not, however, at liberty to overturn Iowa Supreme Court precedent.  *See Figley v. W.S. Indus.*, 801 N.W.2d 602, 608 (Iowa Ct. App. 2011).

no reformation unless there is a preliminary or prior agreement, either written or verbal, between the parties, furnishing the basis for rectification or to which the instrument can be conformed.

*Peak*, 799 N.W.2d at 545 (quoting *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 636 (Iowa 1996)). "Iowa law permits a party to avoid a release only upon proof that *both* parties were mistaken about an essential fact." *Id*. "The mistake must have been both mutual and material." *Gouge v. McNamara*, 586 N.W.2d 710, 713 (Iowa Ct. App. 1998).

The party seeking reformation has the burden of establishing entitlement to reformation by clear, satisfactory, and convincing proof. *Kufer v. Carson*, 230 N.W.2d 500, 503 (Iowa 1975). "The term clear and convincing has been held to connote establishment of facts by more than a preponderance of evidence but something less than establishing a factual situation beyond a reasonable doubt." *Id.*

Generally, a writing will be reformed only if the party seeking reformation clearly and convincingly establishes that it does not express the true agreement of the parties because of fraud or duress, mutual mistake of fact, mistake of law, mistake of one party and fraud or inequitable conduct on the part of the other. Ultimately equity will grant relief if an instrument as written fails to express the true agreement between the parties without regard to the cause of the failure to express the agreement as actually made, whether it is due to fraud, mistake in the use of language, or anything else which prevented the instrument from expressing the true intention of the parties.

*Id.* at 504.

In support of its request for reformation, Nationwide submitted affidavits from the Shaws stating they "understood that the settlement agreement released all claims [the Shaw family] had against product manufacturers, suppliers, and/or distributors arising out of the accident, including claims [the Shaw family] had

against [the Appellees]." Moreover, the Shaws "were informed at the mediation that Nationwide [] intended to seek contribution from these parties for funds they paid to [the Shaws]." The Shaws also executed reformed releases "releas[ing], acquit[ting], and forever discharg[ing] any and all claims [had] against product manufacturers, suppliers, and/or distributors arising out of the Accident, including without limitation claims [had] against [the Appellees]."

Nationwide also provided an affidavit from the Shaws' attorney, in which she stated: "It was expressly discussed before and during mediation that . . . all other claims against any other potentially liable parties, including Defendants herein, would be reserved to [FCC] and Nationwide [] in a third-party action." She further attested "it was understood between the [parties], that [the Shaws] would be foregoing their claims against all other potentially liable entities besides [FCC] and Nationwide [], in favor of permitting [FCC] and Nationwide [] to take those claims." Finally, Nationwide provided the deposition testimony and notes of its representative that indicated Nationwide was settling with the intent to seek contribution from potentially liable third parties.

In granting summary judgment, the district court reasoned:

> Because Nationwide has failed to establish that the true intent of the Shaws, at the time the releases were executed, was to discharge[] the Defendants from liability, Nationwide is not entitled to reformation. It is not clear that the Shaws intended to release the Defendants from liability at the time the settlement agreement was executed. In fact, the evidence potentially indicates the opposite conclusion.

> In the reply to plaintiff's resistance to motion for summary judgment, filed August 28, 2014, PGI provides evidence that the Plaintiff knew the identity of the Defendants "as early as November 8, 2011, more than one year prior to execution of the releases." If the identities of the Defendant were known, and they were not

included within the language of the release agreements, that indicates that it was *not* the intent of the parties to release the Defendants from liability by execution of the releases. Further, as explained above, the language of the releases themselves may provide evidence that the Defendants were intentionally excluded as released parties under the release agreements because "third parties" were not included in the "Settling Parties" category. Although it is not certain that the Defendants were intentionally excluded as parties to be discharged from liability under the releases, it is equally uncertain they were intended to be included. Nationwide has failed to establish a definite intention of the parties not reflected in the original releases so as to justify reformation in this case. Therefore, Nationwide is not entitled to reformation.

Nationwide contends the district court erred in its conclusion, as the court impermissibly weighed the facts and reached a factual determination rather than deny summary judgment based upon the admitted factual dispute. We agree.

At summary judgment, the burden rests with the movant to show the nonexistence of a material fact and that the undisputed facts entitle the movant to judgment as a matter of law. *Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 (Iowa 2014). Nationwide, as the party resisting summary judgment, "must set forth specific facts showing the existence of a genuine issue for trial." *Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 5 (Iowa 2008) (quoting *Hlubek v. Pelecky*, 701 N.W.2d 93, 95 (Iowa 2005)). The district court is required to view the evidence in the light most favorable to Nationwide, as the nonmoving party. *See Goodpaster*, 849 N.W.2d at 6. "Even if facts are undisputed, summary judgment is not proper if reasonable minds could draw from them different inferences and reach different conclusions." *Id.* (citation omitted).

Here, Nationwide and the Appellees clearly dispute whether the Shaws and Nationwide agreed to and intended the releases to discharge the liability of

the Appellees, and therefore excluded the Appellees by mutual mistake. Both parties have identified evidence supporting their respective desired outcomes. Specifically, Nationwide has provided numerous statements and records from the settlement process in support of its contention the contracting parties intended the Shaws to discharge the liability of the Appellees. In reviewing this evidence, the district court determined "it is not certain that the Defendants were intentionally excluded as parties to be discharged from liability under the releases, it is equally uncertain they were intended to be included." In so finding, the district court identified a material, factual dispute. On motion for summary judgment, this is where the district court's inquiry should have ended. *See Clinkscales v. Nelson Secs., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005) ("[A] court deciding a motion for summary judgment must not weigh the evidence, but rather simply inquire whether a reasonable jury faced with the evidence presented could return a verdict for the nonmoving party.").

The Appellees put forth numerous arguments in support of their position that summary judgment was proper.[5] First,[6] the Appellees argue the newly-executed releases fail for lack of consideration. In so arguing, the Appellees fail to cite any law to support the proposition that reformation itself requires additional

---

[5] Because the Appellees largely join in each other's arguments, their arguments are discussed collectively.

[6] The Appellees also argue Nationwide failed to preserve error on this claim because Nationwide first raised reformation in response to the motions for summary judgment and did not seek to amend the petition to affirmatively assert reformation. Here, the issue of reformation was fully argued and briefed by the parties in the summary judgment proceedings and ruled upon by the district court; we therefore find error was preserved. *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa Perspective on Present Practice*, 55 Drake L. Rev. 39, 48 (Fall 2006) (explaining that "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court").

or separate consideration from that provided in the original contract. Numerous courts outside this jurisdiction have held that when parties sign a subsequent agreement that merely clarifies or explains the terms of the original contract, no new or additional consideration is required. *See Farmers Alliance Mut. Ins. Co. v. Hulstrand Constr., Inc.*, 632 N.W.2d 473, 475-76 (N.D. 2001) (listing cases). Regardless, Nationwide is not seeking to enforce the amended releases; Nationwide simply proffers them as further evidence to support its request the original releases be reformed.

Second, the Appellees contend the reformed releases violated the statute of limitations.[7] Again, Nationwide does not put forth the amended releases as independently enforceable contracts; they are presented as evidence of the contracting parties' intent. Further, numerous cases follow "[t]he general rule . . . that reformation relates back to the date of the reformed instrument as to the parties thereto." *Great Atl. Ins. Co. v. Liberty Mut. Ins. Co.*, 773 F.2d 976, 979 (8th Cir. 1985) (citation omitted) (applying Illinois law); *see also Nash Finch Co. v. Rubloff Hastings, L.L.C.*, 341 F.3d 846, 850 (8th Cir. 2003) (applying Nebraska law and holding "the general rule is that a contract, once reformed, relates back—in its effective form—to the original date of execution"); *M.T. Straight's Trust v. C.I.R.*, 245 F.2d 327, 330 (8th Cir. 1957) ("It is a general rule that as

---

[7] Iowa Code section 668.6(3)(a) states a party must "discharge[] the liability of the person from whom contribution is sought by payment made within the period of the statute of limitations applicable to the claimant's right of action and must have commenced the action for contribution within one year after the date of that payment." The injury at issue occurred in October 2011. The Appellees contend that since a two-year statute of limitations applies, the liability had to have been discharged by October 29, 2013. The amended releases were executed on October 6, 2014. Moreover, receipt of payment was acknowledged by the original releases in November 2012; thus, any claim for contribution based on the amended releases would be untimely.

between parties to an instrument a reformation relates back to the date of the instrument, but that as to third parties who have acquired rights under the instrument, the reformation is effective only from the date thereof." (citation omitted)).

Third, the Appellees aver that consideration of Nationwide's extrinsic evidence is improper. Of note, the district court's ruling was premised, at least in part, on the extrinsic evidence provided by the Appellees.[8] Regardless, "parol evidence is admissible in actions for the reformation of legal instruments so long as the evidence is relevant and material." *Montgomery Props. Corp. v. Econ. Forms Corp.*, 305 N.W.2d 470, 474 (Iowa 1981). To interpret Iowa Code section 668.7, as suggested by the Appellees, to preclude consideration of extrinsic evidence for reformation considerations would functionally result in the inability to ever revise a release. *See Blackman v. Folsom*, 200 N.W.2d 542, 543 (Iowa 1972) ("[P]arol evidence is admissible in an equitable action for reformation of a contract to establish fraud or mistake. In the absence of such a salutary exception to the parol evidence rule, it would be virtually impossible to establish the grounds relied on."). There is no statutory or legislative indication this was the intended result. *See generally Aid*, 426 N.W.2d at 635 (cautioning, when interpreting section 668.7, the court "d[id] not, at this time, state that all identification in the release must be made by the court as a matter of law without taking into account extrinsic evidence"). To the contrary, numerous cases have considered extrinsic evidence when reviewing requests for reformation, *see, e.g.*,

---

[8] Specifically, the district court considered extrinsic evidence establishing Nationwide knew the identities of the Appellees more than a year before the releases were signed.

*Johnston Equip. Corp. v. Indus. Indem.*, 489 N.W.2d 13, 18 (Iowa 1992) ("When a party seeks reformation of a policy so that it will match the parties' intentions, extrinsic evidence is admissible to prove what their intentions were."); *Wellman Sav. Bank*, 454 N.W.2d at 857 (affirming the district court's refusal to allow extrinsic evidence at the legal portion of the hearing even though the court allowed extrinsic evidence at the reformation hearing), even within the framework of section 668.7, s*ee Peak*, 799 N.W.2d at 544-45 (discussing extrinsic evidence within the framework of reformation of releases).

Fourth, the Appellees argue allowing reformation would somehow contravene public policy and prejudice the Appellees. But the purpose of reformation is "to uphold the intent of the parties to the contract," *Unisys Corp.*, 637 N.W.2d at 151, and cure mistakes in the expression of a contract, *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 108-09 (Iowa 2011). *See also Hearne v. Marine Ins. Co.*, 87 U.S. 488, 490 (1874) ("Where the agreement as reduced to writing omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected so as to make it conform to their real intent. The parties will be placed as they would have stood if the mistake had not occurred."). Further, the purpose behind the language in section 668.7, as outlined by the court in *Aid*, was to respond to the doctrine that the release of one tortfeasor releases all others. 426 N.W.2d at 633. The impetus was to protect injured parties who, when previously employing boiler-plate release language, had been barred from complaining they had no intention to release unnamed tortfeasors. *Id.* The Appellees have not provided any consideration toward these releases nor relied upon the releases to their detriment. And allowing

reformation does not extend the statute of limitations, as the initial contribution claim was timely brought. Here, correcting the language to accurately reflect the mutual intent of the contracting parties does not unfairly prejudice nonparties to the contract, such as Appellees, or otherwise contravene public policy.

Finally, the Appellees argue generally that the releases are not ambiguous and there is no clear, satisfactory, and convincing evidence of mistake. As to the former argument, the concern in reformation is not if the contract is ambiguous—as the issue is not one of interpretation—it is whether the contract "reflect[s] the real agreement of the parties." *Kufer*, 230 N.W.2d at 503. The Appellees again fail to cite a case supporting their claim that ambiguity is required and numerous cases have found contrarily. *See, e.g.*, *Rosen v. Westinghouse Elec. Supply Co.*, 240 F.2d 488, 491 (8th Cir. 1957) ("We think it is not necessary, as a prerequisite to the reformation of an instrument to conform to the intention of the parties, that the instrument on its face be ambiguous. It is a universal rule of equity in suits to reform written instruments that parol evidence is admissible to establish mutual mistake and to show how the instrument should be corrected to reflect the actual intent of the parties thereto."); *In re Estate of Munawar*, 981 A.2d 584, 587 n.1 (D.C. 2009) ("[F]acial ambiguity is not a requirement for reformation, which merely 'remedies a mistake as to expression,' where 'the writing does not accurately express the parties' mutual agreement.'" (alterations and citations omitted)). As to the latter argument, it is not the role of the court on summary judgment to resolve disputes of fact and determine whether Nationwide has proven its case, but rather to identify whether a genuine issue of material fact exists. *See Milford v. Metro. Dade Cty.*, 430 So. 2d 951 (Fla. Dist. Ct. App. 1983)

("The [appellee's] argument that the release in question, since it so specifically and deliberately limited the parties to be released, could not have been the product of mutual mistake, raises at best a question of fact to be resolved by the trial court at an evidentiary hearing to be held on the appellant's motion to reform. All we decide is that there exists a genuine issue of material fact as to whether the release, upon which the summary judgment was founded, expressed the intent of the parties and that, therefore, summary judgment was precluded."). Because, based on the specific facts identified by Nationwide, there is a genuine issue of fact regarding the agreement and intent of the contracting parties, the court erred in granting summary judgment on the reformation issue.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**